IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GERRON MAURICE LINDSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C. A. No. 04-1383-SLR |
| ) | |
| LT. RISPOLI, C/O MOORE, ) | |
| C/O VICTOR GONZALEZ, ) | |
| SGT. CARPENTER, C/O MANNO, ) | |
| C/O TERRY, NURSE HOLLY, and ) | |
| NURSE BRENDA, ) | |
| ) | |
| Defendants. ) | |

## AFFIDAVIT OF LT. MARCELLO RISPOLI

I, Marcello Rispoli, having been duly sworn according to law, depose and state as follows:

1. I make this Affidavit based upon personal information.

2. I am employed by the State of Delaware's Department of Correction as a Correctional Lieutenant at the Delaware Correctional Center ("DCC") in Smyrna, Delaware.

3. On October 9, 2004, I was the supervisor for the 4:00 p.m. to 12:00 a.m. shift. My supervisory duties included Building 18 in SHU, the maximum security housing unit, as well as several other buildings.

4. At approximately 8:10 p.m. on October 9, 2004, Inmate Gerron Lindsey ("Lindsey") was transferred from the prison infirmary to Building 18, where he was placed in an isolation cell to serve sanction time.

5. It is standard procedure to strip-search all inmates arriving in SHU to check for contraband. Further, it is standard procedure to check all cells for contraband prior to placing an

inmate in a cell in SHU.

6. When Lindsey arrived at SHU from the infirmary that evening, I spoke with him and he stated that he was "through playing games" and that he wanted to get his isolation time over with.

7. At approximately 10:20 p.m., I was called to Building 18 in response to statements by Lindsey, and another inmate, that they would hang themselves. When I arrived at Building 18, I had Lindsey handcuffed and removed from his cell to an interview room.

8. Pursuant to DCC procedure, DCC's medical provider must be called when an inmate states that he wants to injure himself. Therefore, medical was called to examine Lindsey.

9. Prior to the arrival of medical personnel, I met with Lindsey in the interview room and he stated that he was not going to hurt himself but just wanted someone to mop the water in his cell, which he had thrown onto the floor.

10. Lindsey was seen by Nurse Holly Furne from DCC's medical provider, who met with Lindsey and then advised that he could be returned to his cell on strip status as a precaution. Strip status means that all clothing and bedding were removed from the cell. Lindsey was returned to his cell on strip status as directed by Nurse Furne.

11. Lindsey met with Nurse Furne alone. I did not attempt to influence her assessment of Plaintiff in any way. The decision to return Lindsey to his cell was made by Nurse Furne.

12. At approximately 11:10 p.m., I was called back to Building 18 in response to a report that Lindsey had cut himself.

13. When I arrived at Lindsey's cell, I observed that he was biting into his left arm with his teeth. I opened the cell door and briefly sprayed Lindsey with cap-stun (pepper spray)

to stop him from injuring himself. I sprayed Lindsey just one time.

14. There was a great deal of blood on Lindsey's arm and on the floor. I used a garden hose to wash off Lindsey's arm and the floor. I then entered the cell and applied a gauze bandage around Lindsey's arm.

15. At no time did I, or any other officers, laugh at or make any negative comments to Lindsey.

16. At that time, Lindsey was handcuffed and placed in an interview room. Lindsey stated to me that he wanted to return to the infirmary and did not want to do his isolation time. At no time did I threaten Lindsey in any way.

17. Lindsey was seen once again by Nurse Furne, who contacted her supervisor, who directed that Lindsey be returned to the infirmary. Lindsey was returned to the infirmary at approximately 12:00 a.m.

18. I subsequently learned that, at approximately 12:45 a.m., in the infirmary, Lindsey produced to Nurse Brenda Holwerda an item of contraband, a small, sharp object, which was in his mouth.

19. At no time during the evening of October 9, 2004 did I observe a sharp object, or any other item of contraband, in Lindsey's possession or in his cell. To the best of my knowledge at the time that I responded to Lindsey's cell, Lindsey was using his teeth to injure himself.

20. On October 9, 2004, I prepared an incident report documenting the events set forth in this Affidavit. *See* Exhibit A attached hereto.

_____
Lt. Marcello Rispoli

**SWORN AND SUBSCRIBED** before me this 21 day of December, 2005.

_____
Notary