Westlaw.

Slip Copy                                                                                                            Page 1

Slip Copy, 2005 WL 1026723 (D.Del.)
**(Cite as: Slip Copy)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
**Derious J. JOHNSON**, Plaintiff,
v.
Bradley BEREZANSKY, Defendant.
**Derious J. JOHNSON**, Plaintiff,
v.
CPL. ROGERS and Bradley Berezansky, Defendants.
**No. C.A. 03-562(KAJ), C.A. 03-710(KAJ).**

April 28, 2005.

**Derious** J. **Johnson**, SBI # 0028034, Smyrna, Delaware, pro se.
Eileen Kelly, Deputy Attorney General, Wilmington, Delaware, for defendants.

MEMORANDUM OPINION

JORDAN, J.

I. INTRODUCTION

*1 Darius J. Johnson ("Plaintiff") is currently incarcerated at the Delaware Correctional Center (" DCC") in Smyrna, Delaware. (Docket Item ["D.I."] 10.) [FN1] Plaintiff was previously housed at the Sussex Correctional Institution ("SCI") in Georgetown, Delaware, during the period relevant to the complaints. (D.I. 2 at 3 .) On June 17, 2003, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 against Correctional Officer Bradley Berezansky ("Berezansky") alleging that Berezansky violated Plaintiff's Eighth Amendment right to be free of excessive force. (D.I.2.) Plaintiff filed another complaint on July 14, 2003 against Corporal Rogers ("Rogers"), a prison staff supervisor alleging Rogers conspired with Berezansky in violating Plaintiff's civil rights. (D.I. 2 in C.A. No. 03-710.) The complaints were consolidated in an order issued November 30, 2004. (D.I.56).

FN1. Unless otherwise noted, docket item references are to the earlier filed of these consolidated actions, C.A. No. 03-562(KAJ).

Presently before me is a motion for summary judgment filed by Berezansky and Rogers (collectively "Defendants") (D.I.70), and several miscellaneous motions filed by Plaintiff (D.I. 38, 40, 43, and 72). [FN2] For the following reasons, Defendants' motion for summary judgment will be granted, rendering the remaining motions moot.

FN2. Plaintiff's motions include: 1) a petition for a writ of habeas corpus to permit Plaintiff to call eleven inmate witnesses at trial (D.I.38); 2) a request for a change in housing to facilitate access to legal resources and potential witnesses (D.I.40); 3) a motion to compel discovery (D.I.43); 4) a motion for an evidentiary hearing to determine the identity of Cpl. Rogers (D.I.72).

II. BACKGROUND [FN3]

FN3. The following rendition of background information does not constitute findings of fact, and is cast in the light most favorable to the plaintiff.

On May 31, 2003, Plaintiff and Berezansky were involved in an incident at SCI which started during breakfast. (D.I. 71, Ex. C, Dep. of **Derious Johnson**, Dec. 8, 2004 (hereafter "D.I. 70, Ex. C") at 22:17-23:8.) According to Plaintiff, Berezansky accused Plaintiff and his cell mate of trading food in violation of housing rules, and instructed Plaintiff to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                           Page 2

Slip Copy, 2005 WL 1026723 (D.Del.)
(Cite as: Slip Copy)

throw away his tray and "lock in" [FN4] his cell. (*Id.*) Despite protesting Berezansky's order, Plaintiff complied, threw away his food, and went to his cell. (D.I. 36 at 2; D.I. 71, Ex. C at 23:8-12.) Plaintiff acknowledges that, after returning to his cell, he " banged on the door," repeatedly complained about missing his meal, and requested to speak to a lieutenant. (D.I. 71, Ex. C at 23:17-24:10.) Plaintiff also concedes that Berezansky repeatedly instructed Plaintiff to stop calling out and banging on the door. (*Id.*)

> FN4. While the term is not specifically defined, I take it that an order to "lock in" requires prisoners to return to their cells from a common area and remain locked in their cells.

Eventually, Berezansky came to Plaintiff's cell, and Plaintiff asserts that Rogers [FN5] released the cell door allowing Berezansky to open it. (D.I. 36 at 2-3; D.I. 71, Ex. C at 26:4-27:5.) According to Plaintiff, Berezansky entered his cell and instructed him to "get up on [his] bunk." (D.I. 71, Ex. C at 24:17-20.) In response to this instruction, Plaintiff requested that his complaint be relayed to a sergeant. (*Id.*) Plaintiff contends that Berezansky again requested that Plaintiff "[g]et up on the bunk." (*Id.*) In response, Plaintiff contends that he "was walking back to get on [his] bunk and to take [his] slippers off," and before he got on his bunk, he requested grievance forms to "let the sergeant know I didn't eat." (D.I. 71, Ex. C, at 24:23-25:5.) According to Plaintiff, this is when Berezansky sprayed him with capstun and instructed his cell mate to leave the cell. (D.I. 71, Ex. C at 25:6-12.) Plaintiff alleges that he was sprayed a second time with capstun while bent over "gasping for air." (D.I. 36 at 3.) Plaintiff was eventually escorted to a different housing module. (D.I. 71, Ex. C at 25:18-20.)

> FN5. The identity of "Cpl. Rogers" named as defendant in Plaintiff's case is unclear from the record. The Plaintiff specifies " Cpl. Rogers" in his complaint. (D.I. 2 in C.A. No. 03-710.) Berezansky indicates

that he contacted both Sergeant Anthony Rogers and Corporal Brian Rogers concerning his incident with Plaintiff. (D .I. 71, Ex. B at 2, ¶ 5, ¶ 7.) Plaintiff has requested an evidentiary hearing to determine which staff member fits the physical description of Cpl. Rogers provided by Plaintiff (D.I.72.) Because the motion for summary judgment will be granted, the identity of defendant Rogers is immaterial.

*2 Berezansky describes Plaintiff's behavior in his cell as "causing a disturbance on the housing unit," which prompted Berezansky to approach his cell to speak with him. (D.I. 71, Ex. B at 2 ¶ 4.) Berezansky contends that as Plaintiff's cell door opened, Plaintiff stepped out, continued to "[yell] that he wanted to see a lieutenant," and ultimately " clenched his fists and began to approach [Berezansky] in an aggressive manner," to which Berezansky responded by drawing and using his capstun. (D.I. 71, Ex. B at 2, ¶ 6.)

### III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally. *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Gibbs v. Roman,* 116 F.3d 83, 86 n. 6 (3d Cir.1997) ; *Urrutia v. Harrisburg County Police Dep't.,* 91 F.3d 451, 456 (3d Cir.1996).

The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes are ' genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy    Page 3
Slip Copy, 2005 WL 1026723 (D.Del.)
**(Cite as: Slip Copy)**

*Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)).

The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### IV. DISCUSSION

#### A. *Excessive Force Claim Against Defendant Berezansky*

The Eighth Amendment protects inmates from excessive use of force by prison officials. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986). Whenever prison officials stand accused of excessive force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley*, 475 U.S. at 320-21).

*3 Whenever corrections officers use force to keep order, they must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. *Hudson*, 503 U.S. at 6 (internal quotations omitted). Circumstances involving potential or actual unrest may require prison officials to act quickly and decisively and also implicate the principle that "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

In deciding whether force was applied in good faith, the court must consider several factors including: 1) the need for the application of force; 2) the relationship between the need and the amount of force that was used; 3) the extent of injury inflicted; 4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and 5) any efforts made to temper the severity of a forceful response. *See Whitley*, 475 U.S. at 321 (internal citations omitted). The defendants cannot prevail on a motion for summary judgment if "it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." *Id.* at 322. Thus, the plaintiff must be able to establish that the force was maliciously applied to cause harm. *Id.*

Although the plaintiff does not have to demonstrate serious injury, the extent of injuries suffered is a factor in determining whether the use of force was necessary or not. *Hudson*, 503 U.S. at 7; *see also Brooks v. Kyler*, 204 F.3d 102, 104 (3d Cir.2000). " Although the extent of an injury provides a means of assessing the legitimacy and scope of the force, the focus always remains on the force used...." *Brooks*, 204 F.3d at 108.

Applying the five *Whitley* factors, I find that no genuine issue of material fact exists to prevent summary judgment for the Defendants..

#### 1. *The Need for the Application of Force*

The use of force was justifiable because, as Plaintiff admitted, he continued to cause a disturbance in the housing unit after Berezansky instructed him to remain quiet. (D.I. 36 at 2; D.I. 71, Ex. C at 23-24.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 4

Slip Copy, 2005 WL 1026723 (D.Del.)
**(Cite as: Slip Copy)**

Although it is disputed whether or not Plaintiff threatened Berezansky, Plaintiff's disorderly conduct was sufficient to create a need for Berezansky to use force to quell Plaintiff's disruptive behavior. *See Wilson v. Reinhart,* No. CIV.A.02-1551-SLR, 2003 WL 21756393, at *4 (D.Del. July 29, 2003).

### 2. *The Relationship Between the Need for Force and the Amount of Force Used*

Because relatively minor force was used, the amount of force used cannot be said to have been inappropriate for the situation. *Id.* SCI's policies and procedures provide that "[c]apstun use is justifiable to subdue unruly inmates, ... [and] may also be used to move inmates that fail to comply with lawful orders." (D.I. 71, Ex. G at 2, Department of Correction, Policy & Procedures, pg. 8, ch. 1, no. 4.) Spraying Plaintiff with capstun was in proportion to the need to stop him from causing a disturbance in the prison through his continued shouting and banging on the cell door; and to address his lack of compliance with Berezansky's instructions. Even if, as Plaintiff claims, he did not threaten Berezansky, but merely failed to follow instructions, Berezansky's response was reasonable under the circumstances. *See Soto v. Dickey,* 744 F.2d 1260, 1270 (7th Cir.1984) ("The use of mace, tear gas or other chemical agent of the like nature when reasonably necessary ... to subdue recalcitrant prisoners does not constitute cruel and inhumane punishment" even if the inmate is handcuffed or locked in the cell).

*4 Berezansky used capstun only after Plaintiff ignored Berezansky's orders to be quiet. Plaintiff also acknowledges that he was not prompt in complying with Berezansky's instructions to get on his bunk. Plaintiff has not presented evidence that Berezansky used a dangerous amount of capstun for a typical inmate or sprayed Plaintiff for a prolonged period of time. (D.I. 71, Ex. C at 59:16-61:21.)

### 3. *The Extent of the Injury Inflicted*

The extent of the injury is a factor to be considered, even though Plaintiff does not have to show serious injury to state an Eighth Amendment claim. *See Hudson,* 503 U.S. at 7. Here, Plaintiff has not claimed any persistent or serious injury stemming from the incident, and his medical records affirmatively indicate that no injuries were noted. (D.I. 60, Ex. B at 4.) Although Plaintiff asserts that he suffered mental and emotional injuries as a result of the incident with Berezansky, he has failed to introduce any evidence to support even those claims. Thus Plaintiff has failed to show that he suffered a serious injury.

### 4. *Extent of the Threat to the Safety of Staff and Inmates*

The extent of the threat to the safety of the staff and inmates, as perceived by the responsible officials on the basis of the facts known to them must also be considered in justifying the use of force. *Hudson,* 503 U.S. at 7. Prison officials are allowed great deference in setting and executing policies that are, in their opinion, necessary to maintain order, discipline, and security. *Id .* Berezansky was in the best position to perceive any threat to his safety or the security of the prison by Plaintiff's behavior.

Although the parties differ on the facts immediately preceding the use of capstun in Plaintiff's cell,[FN6] Plaintiff described himself as "agitated" when Berezansky entered his cell (D.I. 71, Ex. C at 62:16-18), and Berezansky claimed that he perceived a threat to his safety (D.I. 71, Ex. B at 2 ¶ 6; Ex. F at 1). Berezansky has reasonably justified his perception that Plaintiff presented a threat to Berezansky's safety, thus warranting the use of capstun.

> FN6. Plaintiff claims that he was in the process of getting on his bunk, in compliance with Berezansky's instructions when he was sprayed with capstun. (D.I. 36 at 3.) Berezansky claims that Plaintiff was coming towards him aggressively when he used the capstun. (D.I. 71, Ex. B at 2, ¶ 6.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 5

Slip Copy, 2005 WL 1026723 (D.Del.)
**(Cite as: Slip Copy)**

### 5. *Efforts Made to Temper the Severity of a Forceful Response*

Finally, Berezansky made several attempts to temper the severity of a forceful response. Plaintiff describes how Berezansky offered him several opportunities to calm down before Berezansky came to his cell and used his capstun. (D.I. 71, Ex. C at 50:13-52:5.) Plaintiff and Berezansky's confrontation began during breakfast and continued well after Plaintiff had returned to his cell. Berezansky did not immediately respond with force when Plaintiff refused to follow instructions. Plaintiff has failed to set forth evidence that Berezansky acted maliciously or sadistically, and his claim under § 1983 cannot survive summary judgment.

### B. *Excessive Force and Conspiracy Claim against Cpl. Rogers*

Plaintiff filed a complaint against Rogers in July 2003 for conspiring with Berezansky to assault Plaintiff with capstun. (D.I. 2 in C.A. No. 03-710.) Because Plaintiff has not shown misconduct by Berezansky, he necessarily cannot establish liability on the part of any alleged co-conspirator or supervisor. *See Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir.1986).

### V. CONCLUSION

*5 Accordingly, Defendants' motion for summary judgment (D.I.70) will be granted, and Plaintiff's petition for a writ of *habeas corpus* (D.I.38), motion for transfer (D.I.40), motion to compel discovery (D.I.43), and motion for an evidentiary hearing (D.I.72) will all be denied as moot.

### ORDER

For the reasons set forth in the Memorandum Opinion issued in this matter today,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment (D.I.70) is GRANTED, and Plaintiff's petition for a writ of *habeas corpus* (D.I.38), motion for transfer (D.I.40), motion to compel discovery (D.I.43), and motion for an evidentiary hearing (D.I.72) are all DENIED as moot.

D.Del.,2005.
Johnson v. Berezansky
Slip Copy, 2005 WL 1026723 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03CV00710 (Docket) (Jul. 14, 2003)
• 1:03CV00562 (Docket) (Jun. 17, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.