Westlaw.

Not Reported in F.Supp.2d                                                                          Page 1

Not Reported in F.Supp.2d, 2000 WL 1010281 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

C

Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Aziz QAWI, Plaintiff,
v.
Paul HOWARD, et al., Defendants.
**No. Civ.A. 98-220-GMS.**

July 7, 2000.

Aziz Qawi, Plaintiff, pro se.
Deputy Attorney General Allison L. Peters, Delaware Department of Justice, Wilmington, Delaware, for Defendants Paul Howard, Robert Snyder, Thomas Gulledge, Barry Hawlk, Joseph Ballenger, Bernard Morris, and Philip Loveless.
Linda M. Carmichael, White and Williams LLP, Wilmington, Delaware, for Defendant Prison Health Services, Inc.

MEMORANDUM OPINION

SLEET, J.

I. INTRODUCTION

*1 Aziz Qawi, the plaintiff in this *pro se* action brought under 42 U.S.C. § 1983, alleges in his complaint that he suffered constitutional deprivations at the hands of the defendants [FN1] as the result of a lockdown at the Delaware Correctional Center (DCC), where the plaintiff was incarcerated. Specifically, Qawi alleges that the defendants' failure to provide access to toilet facilities and certain medication during this lockdown violated his rights under the Eighth and Fourteenth Amendments of the United States Constitution. He also challenges the lockdown under various Delaware constitutional provisions and statutes. [FN2]

FN1. The following are named as defendants in this action: Paul Howard, Bureau Chief at the Department of Corrections; Robert Snyder, Warden of the Delaware Correctional Center (DCC); Thomas Gulledge, Deputy Warden of the DCC; Barry Hawlk, Security Chief at the DCC; Joseph Ballenger, Shift Commander at the DCC; Bernard Morris, Lead Worker Correctional Officer at the DCC; Philip Loveless, a correctional officer at the DCC; and Prison Health Services (PHS), an entity under contract with the state to provide medical care at the DCC.

FN2. Specifically, Qawi alleges violations of Article I, Sections 7, 9, and 11 of the Delaware Constitution and 11 Del. C. § 6500 *et seq.* The complaint also refers to a consent decree, but there is no information whatsoever regarding that decree.

All defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). [FN3] They contend that the alleged deprivations suffered by Qawi do not rise to the level of a constitutional violation. Because the court agrees, the defendants' motions to dismiss will be granted.

FN3. Two separate motions to dismiss have been filed-one on behalf of PHS and one on behalf of all other defendants identified above ("the State Defendants").

II. STANDARD OF REVIEW

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations of the complaint. *See Graves v. Lowery,* 117 F.3d 723, 726 (3d Cir.1997); *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). In addition, because Qawi is proceeding *pro se,* the court must liberally interpret his claims. *See Zilch v. Lucht,* 981

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 2

Not Reported in F.Supp.2d, 2000 WL 1010281 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

F.2d 694, 694 (3d Cir.1992) (citing *Haines v. Kerner,* 404 U.S. 519, 520 (1972)). As a result, the court cannot grant the defendants' motion to dismiss unless it appears "beyond a doubt" that Qawi can prove no set of facts that would entitle him to relief. *See Graves,* 117 F.3d at 726 (citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Nami,* 82 F.3d at 65 (citing same). With these standards in mind, the court now turns to a discussion of Qawi's allegations.

### III. BACKGROUND

According to the complaint, certain of the defendants ordered a lockdown of the prison tier on which Qawi was housed. [FN4] At approximately 6:00 P.M., defendants Morris, Loveless, and Ballenger ordered all of the prisoners on Qawi's tier into their cells and proceeded to manually lock the cells' doors from the outside (a "double-lockdown"). The cells on Qawi's tier are "dry cells," which means they do not have toilets or sinks. Prisoners in these cells are required to use communal bathroom facilities. For the duration of the lockdown, the prisoners were denied access to such facilities.

> FN4. Although the complaint is fairly detailed, and Qawi's brief in opposition to the State Defendants' motion to dismiss is even more detailed, it is not clear which of the defendants made the decision to implement the lockdown about which Qawi complains. Qawi appears to allege that Defendants Howard, Snyder, Gulledge, Hawlk and/or Ballenger either " arranged, directed, planned, ordered, made a policy, or had knowledge, monitored and/or acquiesced in" a shakedown (i.e., a search for contraband) of the *west* tier of Building D of the DCC. *See* Opp'n Br. at 6-7; Compl. Pt. IV ¶ A. Qawi, however, was housed in the *east* tier of that building. Qawi clearly alleges that the east tier was subjected to a lockdown during the shakedown. However, it is not clear which of the defendants ordered the lockdown of the east tier. Rather, Qawi alleges that by ordering/planning/etc. the west tier shakedown, the defendants "put into motion the sequence of events that led to" the lockdown of the east tier. *See* Compl. Pt. IV ¶ B; Opp'n Br. at 7. For reasons that will become evident below, the court's dismissal of the complaint does not turn on resolution of this uncertainty.

Qawi contends that officers Morris and Loveless denied his and other inmates' requests to use the toilets before the lockdown began. During the lockdown, which lasted for approximately six hours, these officers repeatedly denied the requests of Qawi and other inmates to be released from their cells to use the bathrooms. In denying these requests, the officers quoted defendant Ballenger's orders that inmates were not to be let out of their cells "for any reason." As a result, Qawi was forced to urinate into his drinking glass and breakfast bowl. He also defecated twice into a paper bag. [FN5] Just after midnight, defendants Loveless and Morris's shift ended and other guards took over. At that time, the inmates were released from their cells. They then had access to toilets and showers and were allowed to clean their cells. Qawi alleges that he vomited several times while cleaning his cell.

> FN5. Qawi alleges that certain prescription medications that he takes, combined with a special diet that has been prescribed by DCC medical staff, causes him to urinate and void his bowels frequently.

*2 Qawi also alleges that during the lockdown, defendant PHS was denied access to the prisoners to administer prescription medication. Qawi has been diagnosed as a paranoid schizophrenic. He also suffers from a learning disability. PHS administers a nightly dose of perphenazine, a prescription anti-psychotic drug. As a result of the lock-down, PHS was unable to administer the perphenazine to Qawi at the usual time.

Qawi alleges that he suffered pain, distress, and embarrassment due to the lack of access to toilets during the lockdown. He also claims that he has nightmares as a result of this incident, and that these

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

Not Reported in F.Supp.2d, 2000 WL 1010281 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

nightmares and the mere thought of these events make him nauseous. In his complaint, Qawi seeks declaratory and monetary relief.

### IV. DISCUSSION

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the deprivation of a right secured by the Constitution and laws of the United States by a person acting under color of state law. *See Tunstall v. Office of Judicial Support of the Court of Common Pleas,* 820 F.2d 631, 633 (3d Cir.1987). The court construes Qawi's complaint as attempting to assert claims of inhumane conditions and denial of medical care in violation of the Cruel and Unusual Punishment clause of the Eighth Amendment, as made applicable to the States by the Fourteenth Amendment. FN6

> FN6. To the extent Qawi attempted to assert Equal Protection or Due Process claims independent of these Eighth Amendment claims, the court can ascertain no allegations to support any such distinct claims.

#### A. Inhumane Conditions

To succeed on a "conditions of confinement" claim under the Eighth Amendment, a plaintiff must satisfy a two-prong test: (1) objectively, the deprivations must be sufficiently serious; and (2) subjectively, the defendant must evince a " deliberate indifference" to the inmate's health or safety. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter,* 501 U.S. 294 (1991) ). To satisfy the objective prong, Qawi must allege that he has been deprived of the "minimal civilized measure of life's necessities." *See id.* (quoting ***Rhodes v. Chapman****,* 452 U.S. 337, 342 (1981)).

Qawi contends that the conditions described above would, if proven, satisfy the objective prong for an Eighth Amendment violation. The court does not agree. Under certain circumstances, the denial of access to toilet facilities may give rise to an Eighth Amendment violation. *See, e.g., Young v. Quinlan,* 960 F.2d 351 (3d Cir.1992); *Howard v. Wheaton,* 668 F.Supp. 1140, 1141-43 (N .D. Ill.1987). However, such violations have generally been found only when the duration of the deprivation is sufficiently long, or when the deprivation is an ongoing condition of confinement, rather than the result of an isolated incident.

For example, the plaintiff in *Young* alleged that he was confined in a dry cell for four days, was not given a plastic urinal for the first 29 hours of confinement, and was allowed to leave his cell only once to defecate and twice to empty his urinal. He also alleged that he was not allowed to wash his hands before eating, not allowed to bathe or shower, not provided with toilet paper despite his diarrhea, and not provided with water to drink. In finding that these conditions, if proven, would constitute a violation of the Eighth Amendment, the court repeatedly emphasized the duration of the foul conditions as an important factor in its determination. *See id.* at 363-65. Other courts have also emphasized the duration of the conditions as being critical to an Eighth Amendment analysis. *See, e.g., Hutto v. Finney,* 437 U.S. 678, 686-87 (1978) ("A **filthy**, overcrowded **cell** and a diet of " grue" might be tolerable for a few days and intolerably cruel for weeks or months."); *Smith v. Copeland,* 87 F.3d 265, 269 (8th Cir.1996) ("[T]he length of time a prisoner is subjected to harsh conditions is a critical factor in [an Eighth Amendment] analysis. Conditions such as a **filthy cell** that may be tolerable for a few days are intolerably cruel for weeks or months." (citations omitted)).

*3 Qawi alleges that he was confined to his cell without access to a toilet for only six hours. Urinating into a drinking glass and breakfast bowl and defecating twice into a paper bag were undoubtedly quite unpleasant experiences. However, Qawi has cited no case, and the court has found none, in which an Eighth Amendment violation has been found based on comparable conditions that lasted for such a brief duration. Indeed, courts have rejected Eighth Amendment claims alleging unsanitary conditions substantially worse than those of which Qawi complains. For example, in *Copeland,* the Eighth Circuit Court of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 4
Not Reported in F.Supp.2d, 2000 WL 1010281 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Appeals held that an inmate's confinement in a cell for four days with an overflowing toilet, during which time he was "made to endure the stench of [his] own feces and urine," did not rise to the level of an Eighth Amendment violation. [FN7] *Copeland*, 87 F.3d at 268. [FN8] By contrast, Qawi alleges that he first urinated at approximately 8:15 P.M. He defecated at approximately 9:30 P.M. and 10:45 P.M. The lockdown ended at approximately midnight, at which time Qawi was given access to the bathroom and permitted to clean himself and his cell. *See* Compl. Pt. IV, ¶¶ O, P.

> FN7. Although there was a dispute in *Copeland* as to whether the inmate was given the opportunity to clean up the mess, the court found it unnecessary to resolve that dispute because it found that "even Smith's scenario of a toilet overflow of four days' duration does not amount to a constitutional violation." *Copeland*, 87 F.3d at 268 n. 3.

> FN8. *See also Shakka v. Smith*, 71 F.3d 162 (4th Cir.1995) (finding no Eighth Amendment violation where inmate was given water and cleaning supplies, but was denied a shower for three days after other inmates had thrown human excrement onto him); *Davis v. Scott*, 157 F.3d 1003, 1005-06 (5th Cir.1998) (concluding that inmate confined in cell with other inmates' blood on the walls and excrement on the floors failed to state a claim under the Eighth Amendment, particularly since cleaning supplies were made available to him).

As Qawi points out in his brief, there are cases in which courts have commented that the denial of access to toilet facilities for even brief periods can rise to the level of an Eighth Amendment violation. *See, e.g., Knop v. Johnson*, 667 F.Supp. 467, 477-81 (W.D.Mich.1987) (collecting cases). These cases, however, generally involve challenges to the *regular operating conditions* of the prison-i.e., situations where under the everyday rules regarding access to toilets, inmates are frequently forced to urinate and defecate in their cells, often requiring them to eat and sleep in unsanitary conditions.

Qawi, by contrast, complains of conditions that occurred on a single evening. [FN9] He does not complain of being required to eat or sleep near human excrement, even on that one occasion. Although he alleges that he vomited while cleaning his cell, and that he gets nauseous when he thinks of the incident, Qawi has not alleged facts demonstrating any significant health risk posed by the conditions that he was forced to endure. *See Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir.1995) (" Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of the deprivation devolve into an application of the subjective views of the judges deciding the question."); *Abdur-Reheem-X v. McGinnis*, 1999 WL 1045069, at *3 (6th Cir. Nov. 12, 1999) (unpublished opinion) (concluding that plaintiff's claim of nausea from being forced to endure the smell of his neighbor's feces was insufficiently serious; noting that "[t]he Eighth Amendment protects [the plaintiff] from conditions of confinement that are health threats; it does not shield him from conditions that cause mere discomfort" (citation omitted)); *see also Young*, 960 F.2d at 364 ("The touchstone [of a conditions of confinement claim] is the health of the inmate.").

> FN9. The lockdown of which Qawi complains occurred on May 28, 1997. Qawi's complaint is dated December 1, 1997; his brief in opposition to the State Defendants' motion to dismiss is dated October 20, 1998. In neither document does Qawi challenge conditions on any occasion subsequent to May 28th.

*4 For these reasons, the court concludes that Qawi has failed to allege deprivations sufficiently serious to satisfy the objective component of an Eighth Amendment violation. [FN10] As such, the court will dismiss his claims based on the temporary denial of access to toilet facilities during the lockdown.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 5

Not Reported in F.Supp.2d, 2000 WL 1010281 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

> FN10. Because Qawi's allegations are insufficient to satisfy the objective component, the court need not address potential deficiencies in his allegations regarding the subjective component. See footnote 4, *supra.*

### B. Denial of Adequate Medical Care

Qawi also contends that as a result of the lock-down, PHS was unable to administer his nightly dose of an anti-psychotic drug, perphenazine, at the usual time. [FN11] To state an Eighth Amendment claim based on inadequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). As with prison conditions cases generally, inadequate medical care claims must satisfy both objective and subjective standards. *See id.*

> FN11. It is not clear whether Qawi was able to get his nightly dose immediately after the lockdown ended, or whether he did not get his dose until the following day.

To satisfy the objective component, the prisoner must establish that his medical needs were "serious." *See id.* Where, as here, an inmate alleges only delayed access to medicine or other medical care, " the objective seriousness of the deprivation should ... be measured 'by reference to the effect of delay in treatment." ' *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995) (quoting *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1188 (11th Cir.1994)). Nowhere in Qawi's detailed complaint or lengthy brief in opposition to dismissal has he even alluded to any harm-serious or otherwise-that resulted from the one-time, temporary delay in the administering of his medication. Nor does he allege that the delay placed him at risk of suffering serious harm. [FN12] As such, his denial of medication claim fails. [FN13]

> FN12. In addition to failing the objective component, Qawi's inadequate medical care claim quite likely fails the subjective, deliberate indifference, prong as well. For example, Qawi's only allegation against PHS is that it was "remiss" in its duties, in that it "should not be deterred from [its] duties because of an unneeded 'lock-down' ordered by Defendants Howard, Snyder, Gulledge, Hawlk and Ballenger." Compl. Pt. IV, ¶ R. It is well established that mere negligence does not constitute " deliberate indifference." *Rouse,* 182 F.3d at 197. Moreover, at least in the absence of any known medical emergency, it cannot be that PHS could have been deliberately indifferent by failing to disregard the orders of high-ranking prison officials. Similarly, Qawi's allegations would likely fail the subjective component with respect to at least some of the State Defendants. *See* footnote 4, *supra.*

> FN13. Because Qawi's inadequate medical care allegations add nothing to the health risks alleged with respect to his access to toilet claim, his claims fail the Eighth Amendment objective component whether considered separately or in the aggregate. *See Young,* 960 F.2d at 359 n. 20.

### V. CONCLUSION

For the foregoing reasons, the court will dismiss Qawi's claims under the Eighth and Fourteenth Amendments. Because all federal claims in this case have been dismissed, the court will exercise its discretion and decline to exercise supplemental jurisdiction over any state law claims Qawi may have asserted in his complaint. *See* 28 U.S.C. § 1367(c)(3). As such, the court will dismiss Qawi's complaint in its entirety. An appropriate order shall be issued in conjunction with this opinion.

D.Del.,2000.
Qawi v. Howard
Not Reported in F.Supp.2d, 2000 WL 1010281 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.